**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| OSN Labs, LLC, | No. CV-23-01188-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Phoenix Energy, LLC, | |
| Defendant. | |

Plaintiff OSN Labs, LLC ("OSN") moves for Default Judgment against Defendant Phoenix Energy, LLC ("Phoenix Energy"), pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. (Doc. 11.) For the following reasons, the Court grants the Motion (*id.*), including OSN's request for a permanent injunction and its reasonable attorney's fees and costs.

## I.     BACKGROUND

OSN is an Arizona limited liability company, with its principal place of business in Phoenix, Arizona. (Doc. 1 ¶ 3.) OSN sells nutritional supplements and is the lawful owner of United States Trademark Registration No. 6,817,122—BLACKout—a trademark for a nutritional supplement designed to aid sleep. (*Id.* ¶¶ 8, 10.) OSN launched BLACKout in 2011 and has since continuously used the BLACKout mark on its sleep aid product, its advertisements, and its promotions. (*Id.* ¶ 9.)

Phoenix Energy is an Idaho limited liability company with its principal place of business in Boise, Idaho. (*Id.* ¶ 4.) Phoenix Energy sells dietary supplements, including a

1  supplement designed for sleep aid called BLACKOUT. (*Id.* ¶¶ 4, 18.) And like OSN,
2  Phoenix Energy markets and sells its BLACKOUT product in Arizona. (*Id.* ¶¶ 19–25.)

3      Counsel for OSN e-mailed Phoenix Energy on June 28, 2023, and July 5, 2023, to
4  ask Phoenix Energy to waive service. (Doc. 8-3; Doc. 8-5.) On July 17, 2023, Counsel for
5  Phoenix Energy responded that he was not authorized to waive service but that he was able
6  to engage in settlement negotiations. (Doc. 8-6 at 2.) He also noted that Phoenix Energy
7  was willing to cease and desist using Blackout as a product. (*Id.*) In response, OSN
8  informed Phoenix Energy that agreeing "to cease and desist using Blackout as a product
9  name" did not address Phoenix Energy's past sales of its Blackout product or future uses
10 of similar names or marks. (Doc. 8-7 at 2.) In the same letter, OSN warned Phoenix Energy
11 of the ramifications if it did not agree to waive service. (*Id.*) Phoenix Energy still refused.
12 Accordingly, on August 9, 2023, OSN effectuated service of process on Phoenix Energy
13 pursuant to Rules 4(h)(1)(A) and 4(e)(1) of the Federal Rules of Civil Procedure and Idaho
14 Uniform Code § 30–21–412. (Doc. 8 ¶ 13.)

15     On June 28, 2023, OSN filed its Complaint against Phoenix Energy for trademark
16 infringement, unfair competition, false designation of origin, and Arizona common law
17 trademark infringement and unfair competition. (Doc. 1 ¶ 1.) To date, Phoenix Energy has
18 failed to file an answer or otherwise respond to the Complaint. OSN filed a Motion for
19 Entry of Default Judgment on November 1, 2023. (Doc. 11.) Because the Clerk of Court
20 previously entered default against Phoenix Energy (Doc. 10), the Court takes the
21 Complaint's factual allegations as true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560
22 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the
23 complaint, except those relating to the amount of damages, will be taken as true." (citations
24 omitted)).

25 **II.   LEGAL STANDARD**

26     Once a default is entered, the district court has discretion to grant default judgment.
27 *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Eitel*
28 *v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) (explaining that Rule 55 of the Federal

Rules of Civil Procedure require a two-step process: an entry of default judgment must be preceded by an entry of default). The following factors are to be considered when deciding whether default judgment is appropriate:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits.

*Eitel*, 782 F.2d at 1471–72.

Because OSN is the party seeking default judgment, it "bears the burden of demonstrating to the Court that the complaint is sufficient on its face and that the *Eitel* factors weigh in favor of granting default judgment." *Norris v. Shenzhen IVPS Tech. Co.*, No. CV-20-01212-PHX-DWL, 2021 WL 4844116, at *5 (D. Ariz. Oct. 18, 2021).

## III.    JURISDICTION, VENUE, AND SERVICE

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *Tuli v. Republic of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999). And "[i]n the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). If a plaintiff's proof is limited to written materials, only these materials need to demonstrate sufficient facts that support a finding of jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (citation omitted).

### A.    Personal Jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Arizona's long-arm statute conforms with the requirements of federal due process. Ariz. R. Civ. P. 4.2(a). Therefore, the analysis of personal jurisdiction under Arizona law is the same. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004).

For the exercise of personal jurisdiction to comport with federal due process, Phoenix Energy must have certain "minimum contacts" with Arizona such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id.* at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Supreme Court has recognized two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 255 (2017). A court has general personal jurisdiction, that is personal jurisdiction over "any and all claims," when a defendant is "essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co*, 326 U.S. at 317). Often, defendants are subject to general personal jurisdiction in the state of their domicile. *Bristol-Myers Squibb Co.*, 582 U.S. at 255. Whether the Court may exercise general jurisdiction over the defaulting Defendant is not at issue here.

Specific personal jurisdiction—limited to a narrower class of claims than general personal jurisdiction—exists when the defendant has taken "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The Ninth Circuit uses a three-part test to analyze specific jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Schwarzenegger*, 374 F.3d at 802).

The plaintiff has the burden of proving the first two prongs. *CollegeSource, Inc. v. AcademyOne*, 653 F.3d 1066, 1076 (9th. Cir. 2011) (citing *Sher*, 911 F.2d at 1361). If

1   proved, "the burden then shifts to [the defendant] to set forth a compelling case that the

2   exercise of jurisdiction would not be reasonable." *Id.* (cleaned up).

3       For the reasons that follow, the Court finds that it may exercise specific personal

4   jurisdiction over Phoenix Energy.

5                   **1.      Prong One**

6       First, Phoenix Energy "purposefully directed" its activities to Arizona. In tort cases,

7   "purposeful direction" is evaluated using the Ninth Circuit's three-part effects test. *See*

8   *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) (noting that

9   trademark infringement is like a tort case for the purposes of determining jurisdiction). This

10  test "requires that the defendant allegedly must have (1) committed an intentional act,

11  (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely

12  to be suffered in the forum state." *Collegesource, Inc.*, 653 F.3d at 1077 (cleaned up).

13      A defendant's sale of a product in the forum state constitutes an intentional act.

14  *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023). Thus, Phoenix

15  Energy's sale of "BLACKOUT" to Arizona residents is an intentional act.

16  (Doc. 1 ¶¶ 19–25.)

17      A defendant expressly aims its conduct at the forum state if it sells physical products

18  into the forum via an interactive website. *Herbal Brands*, 72 F.4th at 1094. But the sale

19  "must occur as part of the defendant's regular course of business instead of being random,

20  isolated, or fortuitous." *Id.* (citing *Keeton v. Hustler Magazine Inc.*, 465 U.S. 770, 774

21  (1984)) (cleaned up). And "the defendant must exercise some level of control over the

22  ultimate distribution of its products beyond simply placing its products into the stream of

23  commerce." *Id.* Here, Phoenix Energy's website, and GNC's website (which sells Phoenix

24  Energy's BLACKOUT product), are both considered interactive because users can

25  exchange information with the host computer by placing their order. (*Id.* ¶¶ 24–25); *Herbal*

26  *Brands*, 72 F.4th at 1091. Further, the sale of BLACKOUT occurred in Phoenix Energy's

27  normal course of business; it is not a "random, isolated, or fortuitous" incident that Phoenix

28  Energy sells BLACKOUT in various GNC stores located in Arizona and that it offers

shipping of this product to addresses in Arizona. (*Id.* ¶¶ 19-25.) And Phoenix Energy exercised control over the distribution of its product via its website that ships the BLACKOUT product to Arizona. *Herbal Brands*, 72 F.4th at 1094–95 (concluding defendants controlled distribution when they created and maintained a "distribution network that reached the relevant forum by choosing to operate on a universally accessible website that accepts orders from residents of all fifty states and delivers products to all fifty states.").

A defendant causes harm that the defendant knows is likely to be suffered in the forum state if it receives a cease-and-desist letter. *Id.* at 1091 (noting that sending a cease-and-desist letter is sufficient to inform defendants that their actions are causing harm). OSN sent a cease-and-desist letter to Phoenix Energy on March 22, 2023, which put Phoenix Energy on notice that its BLACKOUT product was causing harm. (Doc. 1-3.) Thus, Phoenix Energy "purposefully directed" its activities to Arizona, and the first part of the specific jurisdiction test is satisfied.

### 2.    Prong Two

Second, OSN's claims arise out of Phoenix Energy's Arizona-based activities. For example, a defendant's promotion, sale, and distribution of products with a confusingly similar mark in the forum state may arise out of and relate to the plaintiff's trademark claims. *See Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 983 (9th. Cir. 2021). Here, Phoenix Energy promotes, sells, and distributes its BLACKOUT product in Arizona via its website, and through GNC's website and GNC's storefronts. (Doc. 1 ¶¶ 18–25.) And Phoenix Energy's BLACKOUT mark is confusingly similar to OSN's BLACKout mark because the spelling is identical and the products are both nutritional supplements for sleep aid. (*Id.* ¶¶ 9, 18.) Phoenix Energy's promotion, sale, and distribution of BLACKOUT in Arizona arises out of OSN's trademark claims.

### 3.    Prong Three

Third, the exercise of jurisdiction over Phoenix Energy would be reasonable. To evaluate reasonableness, the Court weighs seven factors:

(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Herbal Brands*, 72 F.4th at 1096 (citing *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 607 (9th Cir. 2018)). Defendant has not addressed these factors because it did not respond to the Complaint.

Accordingly, the Court finds it has specific jurisdiction over Phoenix Energy. Taking OSN's allegations as true, Phoenix Energy's sales of BLACKOUT via interactive website occurred in its regular course of business (Doc. 1 ¶ 18), Phoenix Energy caused those products to be shipped to Arizona (*id.* ¶ 24–25), and Phoenix Energy was aware it was causing harm to the forum (Doc. 1-3). Furthermore, Phoenix Energy has not met its burden of showing that exercise of personal jurisdiction would be unreasonable. Thus, Phoenix Energy has sufficient minimum contacts with Arizona such that exercise of personal jurisdiction would be reasonable under the circumstances.

**B.      Subject Matter Jurisdiction**

The Court has original subject matter jurisdiction of any civil action that arises under any act of Congress relating to patents, copyrights, and trademarks. 28 U.S.C. § 1338(a); *Panavision Int'l L.P. v. Toeppen*, 945 F. Supp. 1296, 1300 (C.D. Cal. 1996). OSN alleges a variety of trademark infringement claims under Sections 32 and 43(a) of the Lantham Act. 15 U.S.C. §§ 1114, 1125(a). (Doc. 1 ¶ 1.) Accordingly, the Court has subject matter jurisdiction over those claims.

Under 28 U.S.C. § 1367(a), a federal court shall have supplemental jurisdiction over all state-law claims that are within the same common nucleus of operative facts as the claim with original jurisdiction. *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004). Because the state-law claims arise from the same common nucleus of operative fact that gave rise to the trademark infringement claims under the Lanham Act, the Court will

1   exercise supplemental jurisdiction over the state-law claims. (*Id.*)

2        **C.   Venue**

3        Venue is proper in this district because Phoenix Energy sells its product within the

4   jurisdictional boundaries of this district. Therefore, "a substantial part of the events or

5   omissions giving rise to the claim" occurred in this district. 28 U.S.C. §1391(b)(2).

6        **D.   Service of Process**

7        Federal Rules of Civil Procedure 4(h) and 4(e) allow for service to be perfected by

8   following the law of the state where service is made. Fed. R. Civ. P. 4(h)(1)(A);

9   Fed. R. Civ. P. 4(e)(1). Idaho Uniform Code 30-21-412 permits service via registered or

10  certified mail addressed to the entity at the entity's principal officer if the represented

11  entity's registered agent cannot be served with reasonable diligence. Idaho

12  Code § 30-21-412 (2023). "The address of the principal office of a domestic filing

13  entity . . . must be as shown in the entity's most recent annual report filed by the secretary

14  of state." *Id.* OSN effectuated service of process on Phoenix Energy, an Idaho corporation,

15  by mailing a copy of the Complaint and Summons to Phoenix Energy at the address listed

16  on its Annual Report filed with the Idaho Secretary of State. (Doc. 8 ¶ 14.) Accordingly,

17  OSN was properly served.

18  **VI.   DEFAULT JUDGMENT**

19       **A.   The first, fifth, sixth, and seventh *Eitel* factors**

20       In cases like this, in which the defendant has not responded, nor participated in any

21  litigation, the "first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman*

22  *Indus. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *8 (D. Ariz. March

23  27, 2020).

24       The first factor weighs in favor of default judgment because denying OSN's Motion

25  will leave it "without other recourse for recovery." *Pepsico, Inc. v. Cal. Sec. Cans*, 238

26  F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Prejudice would result if OSN's Motion were

27  denied because it would lose the right to a "judicial resolution" of its claims. *See generally*

28  *Elektra Ent. Grp. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2022) (citing *Eitel*, 782

F.2d at 1471–72). Due to Phoenix Energy's failure to cease selling BLACKOUT sleep aid, and its failure to respond to OSN's Complaint, the only appropriate recourse OSN has is through litigation and this Motion. (Doc. 8 ¶¶ 4–16.)

Next, the fifth factor weighs in favor of default judgment because the well-pleaded factual allegations in the Complaint are taken as true, and there is no "genuine dispute of material facts" that would preclude granting the Motion. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.

Similarly, the sixth factor weighs in favor of default judgment because Phoenix Energy was properly served. (Doc. 8 ¶ 16.) Further, it is unlikely that its failure to answer was due to excusable neglect—Counsel for Phoenix Energy responded to OSN's July 5, 2023, email but did not respond to later communication. (*Id.* ¶ 7.) The process server was unable to reach Phoenix Energy's Counsel, though the process server tried six different times at both the address identified on Phoenix Energy's Annual Report and at the residence of Phoenix Energy's Counsel. (*Id.* ¶¶ 11–12.)

The seventh factor, which favors decision on the merits, generally weighs against default judgment; however, Rule 55 of the Federal Rules of Civil Procedure "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (cleaned up). This factor is not sufficient to preclude the entry of default judgment in this case. *Warner Bros. Ent., Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1073 (C.D. Cal. 2004). Phoenix Energy has been aware of the lawsuit since September 25, 2023, and had ample time to answer or respond. (Doc. 8 ¶ 16.) It chose not to participate.

**B.    The second and third *Eitel* factors**

The second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint—are often "analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Viet. Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (citing *PepsiCo*, 238 F. Supp. 2d at 1175). The Court addresses OSN's claims under (1) Section 32 of the Lanham Act, 15 U.S.C. § 1114, (2) Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),

and (3) Arizona common law. (Doc. 1 ¶ 1.) The analysis for claims under Sections 32 and 43(a) of the Lanham Act is often identical. *Brookfield Commc'ns, Inc. v. West Coast Ent. Grp.*, 174 F.3d 1036, 1067 n.8 (9th Cir. 1999). Additionally, the same eight-factor analysis governs OSN's trademark infringement and unfair competition claims under Arizona common law. *See Taylor v. Quebedeaux*, 617 P.2d 23, 24 (Ariz. 1980) ("[T]he essence of unfair competition is confusion to the public."). Accordingly, these claims will be analyzed together.

### 1.    Section 32 and Section 43(a) of the Lanham Act Claims

To prevail on trademark infringement and unfair competition claims under Sections 32 and 43(a) of the Lanham Act, OSN must show that it has ownership of a valid mark and that Phoenix Energy's use of "BLACKOUT" is likely to cause confusion, or to cause mistake, or to deceive. *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 935 (9th Cir. 2015) (quoting *Fortune Dynamic, Inc v. Victoria's Secret Sores Brand Mgmt.*, 618 F.3d 1025, 1030 (9th Cir. 2010)). "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). Further, "the confusion must be probable, not simply a possibility." *Murray v. Cable NBC*, 86 F.3d 858, 861 (9th Cir. 1996) (cleaned up).

To determine whether Phoenix Energy's use of BLACKOUT constitutes trademark infringement or unfair competition, the Court must first analyze whether OSN has a valid, protectable trademark interest in the BLACKOUT mark. *Brookfield Commc'ns, Inc.*, 174 F.3d at 1046–47. OSN's registration of the mark on the Principal Register in the Patent and Trademark Office "constitutes prima facie evidence of the validity of the registered mark and of [OSN's] exclusive right to use the mark on the goods and service specified in the registration." (Doc. 1 ¶ 10); *Brookfield Commc'ns, Inc.*, 174 F.3d at 1047 (citing 15 U.S.C. §§ 1057(b);1115(a)). Phoenix Energy has not produced rebuttal evidence by showing that it used the BLACKOUT mark in commerce first.

Next, to determine whether Phoenix Energy's use of BLACKOUT would likely

confuse a "reasonably prudent consumer," the Ninth Circuit considers eight factors: "(1) [s]trength of the mark; (2) proximity or relatedness of the goods; (3) similarity of sight; (4) evidence of actual confusion; (5) marketing channels; (6) types of goods and purchaser care; (7) intent; and (8) likelihood of expansion." *Dreamwerks Prod. Grp.*, 142 F.3d at 1129. When analyzing the first factor, courts examine the mark's conceptual strength and commercial strength. *Network Automation, Inc. v. Adv. Sys. Concepts*, 638 F.3d 1137, 1149 (9th Cir. 2011). Conceptual strength classifies the mark "along a spectrum of generally increasing inherent distinctiveness as generic, descriptive, suggestive, arbitrary or fanciful." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1058. Whereas "commercial strength is based on actual marketplace recognition." *Network Automation, Inc.*, 638 F.3d at 1149 (internal quotations omitted). "Unlike arbitrary or fanciful marks which are typically strong, suggestive marks are presumptively weak." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1058. Suggestive marks require "the exercise of some imagination to associate the mark with the good or service." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1211 (9th Cir. 2012). OSN's BLACKout mark is likely suggestive because it subtly connotes a quality about the product—that is, it helps consumers "blackout" when they go to sleep. But low conceptual strength is not the only determinant of a mark's strength. *Brookfield Commc'ns, Inc.*, 174 F.3d at 1058.

The Court next analyzes the commercial strength of OSN's mark. An otherwise inherently weak mark "may be strengthened by such factors as extensive advertising, length of exclusive use, public recognition and uniqueness." *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1536 (9th Cir. 1989). The undisputed facts demonstrate that OSN has sold BLACKout since 2011, that it expended "substantial effort, time and financial resources marketing, advertising and promoting" its product, and that OSN has acquired "distinction, reputation, and goodwill." (Doc. 1 ¶¶ 12–13.) But these facts do not demonstrate that OSN has "so strengthened its mark as to weigh this factor in favor of finding likely [consumer] confusion." *Entrepreneur Media v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002).

Nonetheless, because the products involved are closely related and Phoenix Energy's product name is identical to OSN's (apart from capitalization), "the strength of the mark is of diminished importance in the likelihood of confusion analysis." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1059. "Whether a mark is weak or not is of little importance where the conflicting mark is identical and the goods are closely related." *Id.* (citing J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 11:76 (4th ed. 1998)).

The second factor examines the relatedness of the two products. "The proximity of goods is measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function." *Network Automation, Inc.*, 638 F.3d at 1150 (citation omitted). Both OSN and Phoenix Energy sell nutritional supplements intended to aid with sleep. (Doc. 1 ¶¶ 1, 18.) Both their products are sold to the same class of purchasers who are seeking nutritional supplements designed for sleep aid. (*Id.*); *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 350 (9th Cir. 1979) (citations omitted). These products are marketed and sold to the same intended consumer target market; and therefore, create a likelihood that consumers will be confused. (*Id.*); *see Dreamweks Prod. Grp.*, 142 F.3d at 1130.

The third factor weighs the similarity of the marks, which is tested based on sight, sound, and meaning. *Network Automation Inc.*, 638 at 1150 (citing *Sleekcraft*, 599 F.2d at 351). "The greater the similarity of the defendant's mark to the plaintiff's mark, the greater the likelihood of confusion." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000). Phoenix Energy's use of BLACKOUT on its sleep aid product is identical in sound, meaning, and commercial impression to OSN's BLACKout sleep aid product. (Doc. 1 ¶¶ 9, 18.) Both products have identical names—albeit with slightly different capitalization—both products are sold as nutritional supplements intended to aid sleep, and both products utilize similar packaging with dark backgrounds. (*Id.*) Further, the visual similarity between the two products is striking. Both logos consist of large white letters, atop of black background, with "sleep" on the front label. (*Id.*) Because Phoenix Energy

1    uses the exact word as OSN's registered mark, and the packaging is so strikingly similar,

2    there is a greater likelihood of confusion. *See Ultimate Creations, Inc. v. THQ Inc.*, No.

3    05-cv-01134, 2008 WL 215827, at *3 (D. Ariz. Jan. 24, 2008).




10        The fourth factor considers evidence of actual confusion. "The failure to *prove*

11   instances of actual confusion is not dispositive against a trademark plaintiff, because actual

12   confusion is hard to prove; difficulties in gathering evidence of actual confusion make its

13   absence generally unnoteworthy." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1050 (citation

14   omitted) (emphasis in original). Although OSN did not provide evidence of actual

15   confusion between its product and Phoenix Energy's product, this does not weigh against

16   OSN.

17        The fifth factor considers whether "convergent marketing channels increase the

18   likelihood of confusion." *Sleekcraft*, 599 F.2d at 353. The general class of purchasers who

19   want nutritional sleep aids overlap between OSN and Phoenix Energy. Because the

20   undisputed evidence shows that "the general class of purchasers" exposed to the parties'

21   product overlap at least somewhat, this factor favors OSN. *Pom Wonderful LLC v.*

22   *Hubbard*, 775 F.3d 1118, 1132 (9th Cir. 2014).

23        The sixth factor examines "the type of good or service offered and the degree of

24   care one would expect from the average buyer exercising ordinary caution." *La Quinta*

25   *Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 877 (9th Cir. 2014). Consumers

26   searching for expensive products online are expected to be more sophisticated. *Network*

27   *Automation Inc.*, 638 F.3d at 1153 (citation omitted). But consumers purchasing sleep aid

28   supplements for less than $65.00 are likely to exercise less caution than those purchasing

ads for $2,400 to $16,000, or consumers who paid $439 per night for a hotel room. (Doc. 1 ¶¶ 21–25); *see Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1393 (9th Cir. 1993); *La Quinta Worldwide LLC*, 762 F.3d at 877. Because customer who purchase inexpensive products "are likely to exercise less care" consumer confusion is more likely, which weighs in favor of OSN. *Brookfield Commc'ns, Inc.*, 174 F.3d at 1060.

The seventh factor weighs the alleged infringer's intent. "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, the public will be deceived." *Network Automation Inc.*, 638 F.3d at 1153 (citation omitted). There is insufficient evidence to determine whether Phoenix Energy knowingly adopted its "BLACKOUT" logo with intent to deceive the public. Nonetheless, this factor is not significant enough to overcome the conclusion that a likelihood of confusion exists.

The eighth and final factor considers the likelihood of expansion. "Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to complete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354 (citing Restatement of Torts § 731(b) & Comment c). And "when goods are closely related, any expansion is likely to result in direct competition." *Id.* Therefore, because OSN and Phoenix Energy are directly competing for consumers who want nutritional sleep aid supplements, the potential that one or both of the parties will and or has entered the other's submarket with a competing model is strong. *Id.*

## 2. Summary

The "first to use a mark is deemed the senior user and has the right to enjoin junior users from confusingly similar marks in the same industry and market." *Brookfield Commc'ns Inc.*, 174 F.3d at 1047 (cleaned up). On this record, the evidence shows that Phoenix Energy has not presented evidence that it used the BLACKOUT mark prior to OSN. Further, four factors of the "reasonably prudent consumer test" favor OSN, including: proximity or relatedness of the products, similarity, convergence of marketing

channels, and the types of goods and purchaser care. Accordingly, given the obvious similarities between the parties' marks and relatedness of the products, OSN has sufficiently stated claims under Sections 32 and 43(a) of the Lanham Act, and trademark infringement and unfair competition under Arizona common law. And OSN's allegations are to be taken as true. *Geddes*, 559 F.2d at 560. OSN, therefore, "has stated a claim on which it may recover." *Vietnam Reform Party*, 416 F. Supp. 3d at 962.

## C.    The fourth *Eitel* factor

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored. *See Century Fox Film Corp. v. Streeter,* 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006). In contrast to a complaint's other allegations, allegations pertaining to damages are not taken as true when considering a motion for default judgment. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (citations omitted). A district court has "wide latitude" in determining the amount of damages to award upon default judgment. *James v. Frame*, 6 F.3d 307, 310 (9th Cir. 1993).

OSN does not seek monetary damages. Rather, it seeks injunctive relief from the continued use of its trademark on Phoenix Energy's nutritional sleep aid product. (Doc. 1 ¶¶ 46, 50.) Accordingly, this factor favors granting default judgment.

## D.    Relief Sought—Permanent injunction

OSN requested a permanent injunction against Phoenix Energy's use of its trademark, BLACKout. The Lanham Act empowers the Court to "grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation of a mark holder's rights." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (citing 15 U.S.C. § 1116(a)). "[A] plaintiff seeking a permanent injunction must also satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). OSN must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to

1

2

3

> compensate for that injury; (3) that, considering the balance of
> hardships between plaintiff and defendant, a remedy in equity
> is warranted; and (4) that the public interest would not be
> disserved by a permanent injunction.

*Id.*

4

5

The Lanham Act adds a statutory layer to the irreparable harm analysis for trademark infringement, which creates a "rebuttable presumption of irreparable harm when a permanent injunction is sought to remedy an established trademark violation." *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F. 4th 995, 1005 (9th Cir. 2023) (citing 15 U.S.C. § 1116(a)); *see also AK Futures LLC v. Boyd St. Distro, LLC*, 35 F. 4th 682, 694 (9th Cir. 2022). Thus, there is a rebuttable presumption of irreparable harm here. Further, the Court finds that Phoenix Energy's continued actions would cause OSN irreparable injury that cannot be fully compensated by any monetary damages. The balance of hardships also favors OSN (i.e., source, origin, or approval of goods associated with OSN's BLACKout, or devaluation of OSN's goodwill and business reputation). (Doc. 1 ¶¶ 32–35.) And the public interest is not disserved by prohibiting Phoenix Energy from engaging in conduct contrary to law. *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 534 Fed. Appx. 633, 636 (9th Cir. 2013) ("An injunction that prevents consumer confusion in trademark cases serves the public interest.").

6

7

8

9

10

11

12

13

14

15

16

17

18

19

### E.   Attorney's Fees

20

OSN also seeks an award of its attorney's fees. The Ninth Circuit has upheld awards of attorneys' fees arising under the Lanham Act in the default judgment context "solely because, by entry of default judgment, the district court determined, as alleged in [plaintiff's] complaint, that [defendant's] acts were committed knowingly, maliciously, and oppressively with an intent to . . . injure [plaintiff]." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2020). Phoenix Energy's infringement is willful because it continued to infringe OSN's trademark after receiving a cease-and-desist letter. (Doc. 1 ¶ 26); *Trident Inv. Partners v. Evans*, No. CV-20-01848-PHX, 2021 WL 75826, at *1 (D. Ariz. Jan. 8, 2021). And by defaulting, Phoenix Energy has indirectly admitted it

21

22

23

24

25

26

27

28

has committed willful infringement. *Derek Andrew, Inc.*, 528 F.3d at 702 (noting that the defendant's default sufficiently established the plaintiff's entitlement to attorney's fees under the Lanham Act). Therefore, Phoenix's willful infringement and its failure to participate in the litigation, entitle OSN to reasonable attorney's fees under the Lanham Act.

**V.   CONCLUSION**

Accordingly,

**IT IS ORDERED** that Plaintiff OSN Labs, LLC's Motion for Default Judgment Against Defendant Phoenix Energy, LLC (Doc. 11) is **granted**.

**IT IS FURTHER ORDERED** that the Court will enter a permanent injunction by separate order.

**IT IS FINALLY ORDERED** that Plaintiff OSN Labs, LLC shall have thirty days from the date of this Order to file a motion for attorneys' fees and costs that complies in all respects with LRCiv 54.2.

Dated this 4th day of January, 2024.

Michael T. Liburdi
United States District Judge